# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MIKHEIL J. LEINWEBER, | CASE NO. 1:09-cv–01535-GBC (PC) |
| Plaintiff, | ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DISMISSING ACTION |
| v. | |
| SERGEANT A. DAY, et al., | Doc. 32 |
| Defendants. | |

## I. Procedural Background

On August 31, 2009, Plaintiff, a state prisoner proceeding pro se and in forma pauperis, filed this civil rights action pursuant to 42 U.S.C. § 1983. On March 15, 2010, the Court issued a screening order, dismissing certain claims and finding cognizable claims against Defendants Day and Cao for Eighth Amendment deliberate indifference to medical need and against Defendant Day for Eighth Amendment deprivation of basic necessities and First Amendment retaliation. Doc. 7. On April 6, 2010, the Court issued a second informational order, advising Plaintiff that Defendants may file a motion for summary judgment and how Plaintiff must oppose the motion in order to avoid dismissal, pursuant to *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998). Doc. 10. On August 15, 2011, Defendants filed a motion for summary judgment. Doc. 32. On August 29, 2011, Plaintiff filed an opposition to the motion for summary judgment. Doc. 34.

## II. Legal Standard for Summary Judgment

Summary judgment is appropriate when it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Under summary judgment practice, the moving party:

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" *Id.* If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. Fed. R. Civ. P. 56(c); *Matsushita*, 475 U.S. at 586 n.11. In resolving the summary judgment motion, the Court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. Fed. R. Civ. P. 56(c). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts. Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587.

## III. Plaintiff's Response to Motion for Summary Judgment

In Plaintiff's response to the motion for summary judgment, Plaintiff simply states that there is a difference in facts. *See* Pl. Resp. Doc. 34. He does not attach any exhibits or affidavits but simply relies on the complaint and the record. *See id.* In response to a motion for summary judgment, a plaintiff cannot simply restate his allegations from the complaint. *See Beard v. Banks*, 548 U.S. 521, 534 (2006) (citing Fed. R. Civ. P. 56(e)). Rule 56(e)(2) of the Federal Rules of Civil Procedure

provides that "[w]hen a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must-by affidavits or as otherwise provided in this rule-set out specific facts showing a genuine issue for trial. If the opposing party does not so respond, summary judgment should, if appropriate, be entered against that party." Fed. R. Civ. P. 56(e). If the moving party's statement of facts are not controverted in this manner, a court may assume that the facts as claimed by the moving party are admitted to exist without controversy. *Beard*, 548 U.S. at 527. The Court "is not required to comb through the record to find some reason to deny a motion for summary judgment." *Carmen v. San Francisco Unified Sch. Dist.*, 237 F.3d 1026, 1029 (9th Cir. 2001) (quoting *Forsberg v. Pac. Northwest Bell Tel. Co.*, 840 F.2d 1409, 1418 (9th Cir.1988)). Instead, the "party opposing summary judgment must direct the Court's attention to specific triable facts." *S. Cal. Gas Co. v. City of Santa Ana*, 336 F.3d 885, 889 (9th Cir. 2003). Statements in a brief, unsupported by the record, cannot be used to create an issue of fact. *Barnes v. Independent Auto. Dealers*, 64 F.3d 1389, 1396 n.3 (9th Cir. 1995). Therefore, the Court will deem the facts in the record as undisputed.

### IV. Undisputed Facts in the Record

Plaintiff was placed in Administrative Segregation (Ad Seg) at Kern Valley State Prison on February 23, 2009 due to safety concerns. (Defs. Separate Statement of Undisputed Facts, Doc. 32, Lembach Decl. ¶ 3; Pl. Compl. at 7-8, Doc. 1; Day Decl. ¶ 2; Ex. A to Nield Decl.) Plaintiff was cleared for double-cell housing. (Ex. A to Nield Decl.; Pl. Compl. at 8, ¶ 10, Doc. 1.) When Captain Soto came and talked to Plaintiff on February 24, 2009, Plaintiff could have expressed any complaints to Defendant Sergeant Day's superior at that time. (Day Decl. ¶ 9.) Defendant Sergeant Day has the authority to transfer inmates between cells to conserve space. (*Id.* at ¶ 2.) There is very limited space in prison, and Defendant Sergeant Day needed to conserve space in Ad Seg while Plaintiff was housed there. (*Id.*) Plaintiff refused a cellmate because Plaintiff claims the potential cellmate did not have "like concerns." (Pl. Compl. at 8, ¶ 11, Doc. 1; Day Decl. ¶ 2.) Defendant Sergeant Day advised Plaintiff of the need to conserve space and encouraged Plaintiff to take a cellmate. (Day Decl. ¶ 2.)

When Plaintiff still refused a cellmate, Defendant Sergeant Day, within his authority, moved

Plaintiff to a single cell on February 25, 2009. (*Id.* at ¶ 3.) Plaintiff threatened to "write him up," which meant file a 602 appeal form, and Defendant Sergeant Day told Plaintiff to do what he had to do regarding filing a 602 appeal form. (*Id.*) Defendant Sergeant Day did not move Plaintiff in retaliation for any expressed mental health needs or free speech. (*Id.* at ¶ 2.) In fact, Plaintiff never indicated that he was not receiving his mental health medication and Defendant Sergeant Day is not responsible for administering medication. (*Id.* at ¶ 7.) Furthermore, Plaintiff was receiving his psychiatric medication, mirtazapine, which was to be administered at bedtime. (Ex. B to Nield Decl.) Plaintiff would not have received his medication at bedtime on February 25, 2009 because he was transported to an outside hospital at 6:21 pm. (Ex. D to Nield Decl.; Ex. E to Nield Decl.; Ex. F. to Nield Decl. at 52:7-9.)

Plaintiff claims he had no mattress, laundry, or hygiene items. (Pl. Compl. at 9, ¶ 14, Doc. 1.) When an inmate is moved inside of Ad Seg, their mattress is not always moved with them. (Day Decl. ¶ 4.) Inmates get a "fish kit," which contains items like a toothbrush, soap, tooth powder, blanket, pillow case, deodorant, etc. (*Id.*) In fact, when Plaintiff was in Ad Seg prior to his suicide attempt, he received his meals, had trash pick-up, as well as showers, which would have required soap. (Ex. C to Nield Decl.; Day Decl. ¶ 6; Ex. F to Nield Decl., Pl. Dep. at 55:12-18.) On February 25, 2009, the day Plaintiff attempted suicide, he received a shower during Third Watch, which is from 2 pm to 10 pm. (*Id.*)

Defendant Sergeant Day did not take Plaintiff to a holding cell on February 25, 2009. (Day Decl. ¶ 5.) Plaintiff never told Defendant Sergeant Day that he was suicidal on February 25, 2009 or at any time whatsoever. (*Id.* at ¶¶ 3,5.) Defendant Sergeant Day rarely deals with inmates unless there is a problem that requires his supervision. (*Id.* at ¶ 1.) Defendant Sergeant Day never provoked Plaintiff to attempt suicide or encouraged him to do so. (*Id.* at ¶¶ 3,5.) Defendant Sergeant Day spoke with Defendant Cao about why Plaintiff was in the holding cell. (Day Decl. ¶ 5; Cao Decl. ¶ 7.) Defendant Sergeant Day told Defendant Cao that he thought Plaintiff was agitated because of his housing situation. (*Id.*) Defendant Sergeant Day cannot see the holding cells from his office, and therefore could not have viewed the mental health assessment conducted by Defendant Cao. (Day Decl. ¶ 5.)

Defendant Cao conducted the mental health assessment of Plaintiff on February 25, 2009. (Cao Decl. ¶ 2; Ex. A to Cao Decl.; Ex. F to Nield Decl., Pl. Dep. 29:23-25.) Plaintiff had never met Defendant Cao prior to the assessment. (Ex. F to Nield Decl., Pl. Dep. 28:17-21.) Defendant Cao followed her custom practice of observing Plaintiff without his knowledge while he was in the holding cell before going through the Suicide Risk Assessment. (Cao Decl. ¶ 2.) While observing Plaintiff without his knowledge, Defendant Cao observed Plaintiff laughing and joking with other inmates. (Cao Decl. ¶ 2; Ex. F to Nield Decl., Pl. Dep. at 31:2-6.) Defendant Cao filled out the Chronological Interdisciplinary Progress Notes form as well as the Suicide Risk Assessment while doing her mental health assessment of Plaintiff. (Cao Decl. ¶ 4; Ex. A to Cao Decl.) Defendant Cao filled out the forms with the information that Plaintiff provided. (*Id.*) She also observed how Plaintiff reacted to questions and how he answered as part of her assessment. (Cao Decl. ¶ 3.)

Plaintiff demanded that his property be returned to him. (Cao Decl. ¶ 4; Ex. A to Cao Decl.) He was angry that his property had not been delivered to him and seemed to be very concerned with his property. (*Id.*) He threatened that he would hurt someone if his property was not returned. (*Id.*) Defendant Cao explained to him that there is a window of 10 to 14 days before an inmate receives his personal property in Ad Seg because inmates have to go before a committee before they can receive their property. (*Id.*) Plaintiff stated that he was fine with that. (*Id.*) Although Plaintiff claimed he was "not alright," his behavior was incongruent with his assertion. (Cao Decl. ¶ 4; Ex. A to Cao Decl.) Plaintiff never told Defendant Cao that he would kill himself or that he was "going suicidal." (*Id.* at ¶¶ 3, 4; Ex. A to Cao Decl.) Plaintiff also never told Defendant Cao that he had a "plethora of pills" in his cell and he denied any current intent at the time of self-harm. (*Id.* at ¶ 4; Ex. A to Cao. Decl.) Plaintiff did not tell Defendant Cao that he did not have a mattress in his cell. (*Id.* at ¶ 4.) In the professional opinion of Defendant Cao, Plaintiff was not at risk of suicide and did not require placement in a mental health crisis bed (MHCB). (*Id.* at ¶ 5; Ex. A to Cao. Decl.) If Defendant Cao's expert opinion was that Plaintiff was suicidal, she would have placed him in a MCHB. (*Id.* at ¶ 5.) Defendant Cao advised Plaintiff to tell correctional staff if he had any intent to self-harm. (*Id.* at ¶ 5; Ex. A to Cao. Decl.)

Defendant Cao spoke with Defendant Sergeant Day after her mental health assessment

because she had to ensure Plaintiff was clear to go back to his cell. (*Id.* at ¶ 7.) Neither of the conversations between Defendant Sergeant Day and Defendant Cao influenced Defendant Cao's mental health evaluation or professional opinion in any way. (*Id.*) At approximately 5:30 pm on February 25, 2009, Plaintiff had a possible overdose on unknown pills that he obtained from his neighbor. (Ex. D to Nield Decl.) Neither Defendant Sergeant Day or any other correctional officer placed or left any pills in Plaintiff's cell. (Ex. E to Nield Decl.) Plaintiff complained of shortness of breath, nausea, or sleepiness. (Ex. D to Nield Decl.) However, Plaintiff appeared happy, talkative, and wide-awake. (*Id.*) At approximately 6:21 p.m. on February 25, 2009, Plaintiff was taken to Delano Regional Medical Center by Emergency Medical Services. (Ex. D, E & F to Nield Decl., Pl. Dep. at 52:7-9.)

Plaintiff returned to Kern Valley State Prison on February 27, 2009. (Lembach Decl. ¶ 5; Ex. A to Lembach Decl.) Plaintiff was in the Crisis Treatment Center (CTC) from February 27, 2009 to March 3, 2009. (*Id.*) On March 3, 2009, Plaintiff was transferred to Facility B1 around 2:13 pm where he began his suicide prevention five-day follow up. (*Id.* at ¶ 6; Ex. A to Lembach Decl.; Ex. B to Cao Decl.) Plaintiff was released from a CTC into Ad Seg. (Lembach Decl. ¶¶ 3, 6; Ex. A to Lembach Decl.) Plaintiff would have been at least at "some risk" for suicide and placement in a stripped cell while on the five-day follow up would have been normal procedure. (Cao Decl. ¶ 10.) Plaintiff would have likely been at risk of harming himself after being released from CTC. (*Id.*) Defendant Cao did a mental status exam of Plaintiff on March 4, 2009 at 12:40 pm. (*Id.* at ¶ 8; Ex. B to Cao Decl.) During that mental status exam, Plaintiff was preoccupied with his property concerns and threatened to kick the window if his property was not given to him right away. (*Id.*) He denied any current suicidal intent or plan. (*Id.*) On March 5, 2009 at 3:35 in Facility B3, Defendant Cao conducted the mental status exam of Plaintiff for day 2 of the 5-day suicide prevention follow-up. (*Id.*) Plaintiff was "okay" during that exam and had a bright affect. (*Id.*) Plaintiff was transferred from Facility B1 to Facility B3 on March 5, 2009 at 11:01 am. (Lembach Decl. ¶ 7; Ex. A to Lembach Decl.; Ex. B to Cao Decl.)

Defendant Day is the staff Sergeant on Facility B1 and does not supervise Facility B3. (Day Decl. ¶ 1.) Plaintiff was only in the same facility as Defendant Sergeant Day for two days after

returning from the outside hospital. (Lembach Decl. ¶ 7; Ex. A to Lembach Decl.) During those two days, Plaintiff received all of his meals and trash disposal. (Ex. F to Nield Decl.) Plaintiff refused a shower on March 3, 2009 and also got a shower on March 5, 2009. (*Id.*) Finally, Plaintiff claims that he had liver and kidney damage due to his alleged drug overdose. (Pl. Compl. at ¶¶ 25, 38, Doc. 1; Ex. F to Nield Decl., Pl. Dep. at 67:3-25.) However, there is no evidence to support any of Plaintiff's claims that his alleged overdose contributed in any way to any kidney or liver damage except for speculation on the part of Plaintiff. (Ex. F to Nield Decl., Pl. Dep. at 67:3-18, 20-25.)

## V. Eighth Amendment Deliberate Indifference to Serious Medical Needs

### A. Legal Standard

The Eighth Amendment protects prisoners from deliberate indifference to serious medical needs. *See Estelle v. Gamble*, 429 U.S. 97, 104 (1976). An inmate-plaintiff satisfies the elements of deliberate indifference only when he or she shows that the prison official knew of and disregarded a substantial risk of serious harm to the inmate's health. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). To demonstrate deliberate indifference, the inmate must satisfy two requirements: the first is objective and the second is subjective. First, the inmate must show that the deprivation was objectively "sufficiently serious." *Wilson v. Seiter*, 501 U.S. 294, 298 (1991). This requires the prisoner to prove that he was subjected to substantial harm. *Wood v. Housewright*, 900 F.2d 1332, 1335 (9th Cir. 1990). Second, the inmate must show that the prison official subjectively acted with deliberate indifference to the prisoner's health or well-being. *Farmer*, 511 U.S. at 835-40. Culpability under this prong of the analysis requires a finding that the defendants' actions were manifested by the intentional denial, interference, and/or ignorance of the plaintiff's medical needs. *Estelle*, 429 U.S. at 104-05. There must be a purposeful act or failure to act on the part of defendant. *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992). Thus, neither an inadvertent failure to provide adequate medical care, nor mere negligence or medical malpractice, nor a mere delay in medical care, nor a difference of opinion over proper treatment, constitutes an Eighth Amendment violation. *See id.* at 105-06; *Sanchez v. Vild*, 891 F.2d 240, 242 (9th Cir. 1989); *Shapley v. Nev. Bd. of State Prison Comm'r*, 766 F.2d 404, 407 (9th Cir. 1984).

Accordingly, the Constitution does not require that prison doctors give inmates every medical

treatment they desire. *Bowring v. Godwin*, 551 F.2d 44, 47-48 (4th Cir. 1977). To establish a constitutional right to treatment under the Eighth Amendment, an inmate must show that a physician or other health care provider exercising ordinary skill and care at the time of observation would conclude with reasonable medical certainty that: (1) the prisoner's symptoms evidenced a serious disease or injury; (2) the disease or injury was curable or could be substantially alleviated; and (3) the potential for harm to the prisoner by reason of delay or denial of care would be substantial. *Id.* "The courts will not intervene upon allegations of mere negligence, mistake or difference of opinion." *Id.* at 48; *see also Sanchez*, 891 F.2d at 242.

In addition, gross negligence is insufficient to establish deliberate indifference. *See Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990). As a matter of law, differences of opinion between prisoner and prison doctors fails to show deliberate indifference to serious medical needs *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996).

Moreover, mere verbal harassment or abuse alone is not sufficient to state a claim under § 1983, *Oltarzewski v. Ruggiero*, 830 F.2d 136, 139 (9th Cir. 1987), and threats do not rise to the level of a constitutional violation, *Gaut v. Sunn*, 810 F.2d 923, 925 (9th Cir. 1987).

**B. Analysis**

**1. Defendant Cao**

Plaintiff cannot demonstrate that Defendant Cao objectively or subjectively put him at risk of substantial harm. Plaintiff cannot show that the risk of harm to him was sufficiently serious. First, Defendant Cao only saw Plaintiff once before he attempted suicide. (Ex. F to Nield Decl., Pl. Dep. at 28:17-21.) Defendant Cao conducted a mental health assessment when Plaintiff was allegedly claiming he was going suicidal. (Cao Decl. ¶ 2; Ex. A to Cao Decl.; Ex. F to Nield Decl., Pl. Dep. at 29:23-25) However, he never told Defendant Cao he was suicidal and he was more preoccupied with his property concerns. (Cao Decl. ¶¶ 3, 4; Ex. A to Cao Decl.) He was even preoccupied with his property concerns after he returned to the prison. (*Id.* at ¶ 8; Ex. B to Cao Decl.) Inmates sometimes claim they are "going suicidal" in order to get someone to negotiate with them for what they want. (Cao Decl. ¶ 6.)

Plaintiff's only allegations against Defendant Cao are that he believes she may not have been

listening to what he had to say during the mental health assessment. (Ex. F to Nield Decl., Pl. Dep. at 80:6-16 & 82:9-16.) Plaintiff's allegations are speculative and cannot be used to prove that Defendant Cao was not paying attention to Plaintiff. Indeed, Defendant Cao did not have the required subjective intent. Defendant Cao observed Plaintiff without his knowledge before she even began asking him any questions. (Cao Decl. ¶ 2.) While she observed him without his knowledge, he was laughing and joking with other inmates. (Cao Decl. ¶ 2; Ex. F to Nield Decl., Pl. Dep. at 31:2-6.) Additionally, she went through the required forms during the mental health assessment and observed how he reacted to questions and how he answered as part of her assessment. (Cao Decl. ¶¶ 3, 4; Ex. A to Cao Decl.) No conversation with Defendant Day affected her assessment. (*Id.* at ¶ 7.)

In the professional opinion of Defendant Cao, Plaintiff did not display suicidal tendencies. (Cao Decl. ¶ 5; Ex. A to Cao Decl.) He never claimed he was suicidal and did not tell her he had pills in his cell. (Cao Decl. ¶¶ 3, 4; Ex. A to Cao Decl.) In fact, Plaintiff could not have told her he had pills in his cell because he did not; he got them from his neighbor. (Ex. E to Nield Decl.) Plaintiff also could not have indicated that he was not receiving his psychiatric medication because he was receiving his mirtazapine. (Ex. B to Nield Decl.) Plaintiff never gave her any true indication that he was suicidal and her professional opinion was reasonable. Plaintiff is not a medical professional and cannot mandate the type of treatment he thinks he should receive. *See* Cal. Code Regs. tit. 15 § 3350(a) (stating "treatment will be based on the judgment of the physician.") Plaintiff merely believes that she acted "intentionally" and "maliciously" only because she did not provide him the treatment he anticipated. (Ex. F to Nield Decl., Pl. Dep. at 84:10-13.) The evidence demonstrates that Defendant Cao was not deliberately indifferent to Plaintiff's medical needs. Therefore, Plaintiff has not established a genuine issue of material fact for trial as to his claim against Defendant Cao for deliberate indifference to a serious medical need.

### 2. Defendant Day

Plaintiff also cannot demonstrate that Defendant Day was deliberately indifferent to his medical needs. Defendant Day could not have been deliberately indifferent to Plaintiff's medical needs because he never expressed to Defendant Day that he was not receiving his mental health medication. (Day Decl. ¶ 7.) In any event, Defendant Day is not responsible for dispensing

medication and Plaintiff was in fact receiving his medication. (*Id.*; Ex. B to Nield Decl.) Defendant Day never provoked Plaintiff or encouraged him to commit suicide. (Day Decl. ¶¶ 3, 5.) Furthermore, Plaintiff never told Defendant Day that he was suicidal. (*Id.*) Defendant Day is a supervisor and only gets involved when there is a situation that requires his direct attention. (*Id.* at ¶ 1.) Defendant Day thought Plaintiff was agitated because of his housing situation since had been moved to a single cell. (Day Decl. ¶¶ 3, 5; Cao Decl. ¶ 7.) Defendant Day did nothing to influence the mental health assessment of Dr. Cao because he did not take Plaintiff to the holding cell, he could not see Plaintiff being interviewed and he did not influence Defendant Cao's decision. (Day Decl. ¶¶ 5, 7.) Defendant Day did not speak to Plaintiff after the mental health assessment like Plaintiff claims. (Ex. F to Nield Decl., Pl. Dep. at 46:2-8.) Plaintiff never told Defendant Day that he had pills in his cell because, as previously noted, Plaintiff obtained the pills from his neighbor. (*Id.* at 81:12-15; Ex. E to Nield Decl.) However, Plaintiff claims in his complaint he had the pills in his cell for over a day. (*Id.* at 36:14-16; p. 38:1-11.) Regardless, Plaintiff attempted suicide around 5:30 p.m., which is after Defendant Day's shift ended. (Ex. D to Nield Decl.; Lembach Decl. ¶ 7; Ex. A to Lembach Decl.) There was no purposeful act or failure to act on the part of Defendant Day because Plaintiff never expressed to Defendant Day that he was suicidal. (Day Decl. ¶¶ 3, 5.) Therefore, Plaintiff has not established a genuine issue of material fact for trial as to his claim against Defendant Day for deliberate indifference to a serious medical need.

### 3. Plaintiff Has Shown No Damages

Plaintiff alleges he had liver and kidney damage as a result of the Defendants' actions. (Pl. Compl. at ¶¶ 25, 38, Doc. 1; Exhibit F to Nield Decl., Pl. Dep. at 67:3-25.) However, no doctor has told Plaintiff he has suffered liver or kidney damage as a result of any of the Defendants. actions. (*Id.* at 67:3-18.) Plaintiff has based his alleged damages on his own mere speculation, which is insufficient to demonstrate any liver or kidney damage. Defendants are entitled to summary judgment.

//
//
//

### VI. Eighth Amendment Deliberate Indifference to Basic Human Necessities

### A. Legal Standard

The Eighth Amendment protects prisoners from "cruel and unusual punishment." U.S. Const. Amend. VIII. But this is not a mandate for comfortable prisons. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). Indeed, prison conditions may be both restrictive and harsh without violating the Constitution. *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). Within this construct, however, prison officials must provide food, clothing, shelter, sanitation, medical care, and personal safety. *Toussaint v. McCarthy*, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment when these two components are met: (1) the deprivation alleged must be objectively sufficiently serious; and (2) the prison official possesses a sufficiently culpable state of mind. *Farmer*, 511 U.S. at 834 (citing *Wilson v. Seiter*, 501 U.S. 294, 297-98 (1991)). In determining whether a deprivation of a basic necessity is sufficiently serious to satisfy the objective component of an Eighth Amendment claim, courts consider the circumstances, nature, and duration of the deprivation. The more basic the need, the shorter the time it can be withheld. *See Johnson v. Lewis*, 217 F.3d 726, 731 (9th Cir. 2000). Substantial deprivations of shelter, food, drinking water or sanitation over an extended time are sufficiently serious to satisfy the objective component of an Eighth Amendment claim. *Id.* at 732-33.

Courts have found that temporarily depriving prisoners of a mattress does not violate the Eighth Amendment. *See, e.g., Hernandez v. Denton*, 861 F.2d 1421, 1424 (9th Cir.1988) (holding that allegation that inmate slept without a mattress for one night is insufficient to state an Eighth Amendment violation), *vacated on other grounds*, 493 U.S. 801 (1989); *see also O'Leary v. Iowa State Men's Reformatory*, 79 F.3d 82, 84 (8th Cir. 1996) (no Eighth Amendment violation where inmate forced to sleep on cement slab for four (4) days); *Williams v. Delo*, 49 F.3d 442, 445-46 (8th Cir.1995) (no Eighth Amendment violation where inmate failed to allege any evidence that his health was impaired as a result of four (4) day confinement in a cell without clothes or bedding). In the majority of decisions where the court considered whether failure to provide a mattress to an inmate violated the Eighth Amendment, the failure was accompanied by other factors such as extreme cold, lack of sanitary conditions, solitary confinement, inadequate clothing, or improper diet. *See, e.g.,*

*Sellars v. Beto*, 409 U.S. 968, 969 (1972) (solitary confinement, in cell 24 hours a day, only fed bread and water, no mattress); *Rodgers v. Thomas*, 879 F.2d 380, 385 (8th Cir.1989) (no toilet or sink, clothing confiscated, only allowed to shower once every five days, no mattress); *French v. Owens*, 777 F.2d 1250, 1253 (7th Cir.1985) (shackled to bed, sometimes stripped, denied right to use toilet, had to lie in own excrement, no mattress), *cert. denied*, 479 U.S. 817 (1986).

Similarly, being temporarily deprived of toothpaste does not violate the Eighth Amendment. *See Harris v. Fleming*, 839 F.2d 1232, 1235 (7th Cir. 1988) (depriving prisoner of toilet paper, soap, toothpaste and toothbrush while keeping him in filthy, roach-infested cell for a period of several days was not a constitutional violation); *see also Williams*, 49 F.3d at 444-46 (placement in strip cell without water, mattress, a toothbrush, toothpaste, deodorant, soap, sheets, blankets, pillow cases, pillows, his legal mail and/or clothing, for four days did not violate Eighth Amendment).

### B. Analysis

Plaintiff cannot demonstrate through any admissible evidence that Defendant Day violated any Eight Amendment right to basic human necessities. Plaintiff received food, clothing, shelter, sanitation and medical care. First, Plaintiff received all of his meals prior to his suicide attempt and after he returned to Defendant Day's facility. (Day Decl. ¶ 6; Ex. C & F to Nield Decl., Pl. Dep. at 55:12-18.) Furthermore, Plaintiff regularly received trash disposal while housed in Defendant Day's facility. (*Id.*) Plaintiff regularly received his showers prior to his suicide attempt. (*Id.*) After Plaintiff returned to Defendant Day's facility, he was offered but refused a shower on March 3, 2009 and had a shower on March 5, 2009. (*Id.*) Plaintiff is and was upset that he was moved to a single man cell because inmates do not like the single man cell. (Day Decl. ¶ 2.) There is less space in the single man cell and it has less shelving. (*Id.*) Plaintiff was placed in Administrative Segregation on February 23, 2009 because of safety concerns and was cleared for double cell housing by Captain Soto. (Pl. Compl. at 8, ¶¶ 6, 10, Doc. 1; Day Decl. ¶ 2; Ex. A to Nield Decl.) Defendant Sergeant Day has the authority to transfer inmates between cells. (Day Decl. ¶ 2.) Plaintiff refused to take a cellmate because he claims the potential cellmate did not have "like concerns." (Pl. Compl. at 8, ¶ 11, Doc. 1; Day Decl. ¶ 2.) Defendant Day advised Plaintiff that he needed to take a cellmate in order to conserve space because the space in Administrative Segregation was limited. (Day Decl. ¶ 2.) On

February 25, 2009, Defendant Day transferred Plaintiff to a single man cell because Plaintiff refused to take a cellmate and he needed to use the space in the double cell. (*Id.* at ¶ 3.)

After Plaintiff was moved to a single cell, he threatened to "write up" Defendant Day because he was upset about the move. (*Id.*) While a mattress does not always move with an inmate when an inmate is moved inside of Administrative Segregation, Plaintiff was moved into the single cell on February 25, 2009 and attempted suicide that same day around 5:30 pm. (*Id.* at ¶ 4; Ex. D to Nield Decl.) There was no time for Plaintiff to be deprived of a mattress prior to his suicide attempt. Additionally, Plaintiff would have received a "fish kit," which would have included items like a toothbrush, soap, tooth powder, a blanket, pillowcase, deodorant, etc. (*Id.* at ¶ 4.) Plaintiff was not deprived of any basic human necessity on February 25, 2009 or anytime prior thereto while he was in Administrative Segregation.

After his suicide attempt, Plaintiff returned to Defendant Sergeant Day's facility after being released from the Crisis Treatment Center (CTC) on March 3, 2009 around 2:13 p.m. where he began the suicide prevention five-day follow up. (Lembach Decl. ¶ 6; Ex. A to Lembach Decl.; Exhibit B to Cao Decl.; Day Decl. ¶ 1.) When an inmate is released from CTC, he is placed into a stripped cell in order to prevent the inmate from attempting suicide. (Cao Decl. ¶ 10.) A stripped cell will usually have toilet paper, soap, tooth powder, etc. but the inmate will not receive a pen or other potentially dangerous objects that he may use to attempt suicide such as a blanket he could rip up to create a noose. (*Id.*) An inmate is typically at risk of suicide after being released from CTC during the five-day follow up. (*Id.*) This explains any of Plaintiff's allegations that he was without some of the things he would normally have after he attempted suicide. (Pl. Compl. at 9, ¶ 14, Doc. 1.)

However, when Plaintiff was observed on March 4, 2009 and March 5, 2009 while on the five-day follow up, he never mentioned being deprived of any "necessities of life," and instead was more focused on his personal property. (Cao Decl. ¶ 8; Ex. B to Cao Decl.) Plaintiff was only in Defendant Sergeant Day's facility for less than 48 hours from March 3, 2009 around 2 p.m. to March 5, 2009 around 11 a.m. (Lembach Decl. ¶¶ 6, 7; Ex. A to Lembach Decl.; Ex. B to Cao Decl.) During that time, Plaintiff was on the five-day follow up for suicide prevention, which would have precluded him from having certain items which he could use to harm himself. (Lembach Decl. ¶ 6; Ex. A to

Lembach Decl.; Cao Decl. ¶ 10; Ex. B to Cao Decl.) He did receive his meals and trash disposal and refused a shower on March 3, 2009. (Ex. F to Nield Decl.) Plaintiff was not deprived of the basic human necessities in the total time he was on Facility B1, and Defendant Day did not have a culpable state of mind. Therefore, Plaintiff has not established a genuine issue of material fact for trial as to his claim for deliberate indifference to basic human necessities.

## VII. First Amendment Retaliation

### A. Legal Standard

Allegations of retaliation against a prisoner's First Amendment rights to speech or to petition the government may support a § 1983 claim. *Rizzo v. Dawson*, 778 F.2d 527, 532 (9th Cir. 1985); *see also Valandingham v. Bojorquez*, 866 F.2d 1135 (9th Cir. 1989); *Pratt v. Rowland*, 65 F.3d 802, 807 (9th Cir. 1995). Within the prison context, a viable claim of First Amendment retaliation entails five basic elements: (1) An assertion that a state actor took some adverse action against an inmate (2) because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate correctional goal. *Rhodes v. Robinson*, 408 F.3d 559, 567-68 (9th Cir. 2005); *accord Brodheim v. Cry*, 584 F.3d 1262, 1269 (9th Cir. 2009).

### B. Analysis

Defendant Sergeant Day took no retaliatory action against Plaintiff for expressing any mental health needs or free speech. (Day Decl. ¶ 2.) Plaintiff never indicated to Defendant Day that Plaintiff was not receiving his mental health medication, probably due to the fact that he was receiving it. (*Id.* at ¶ 7; Ex. B to Nield Decl.) Furthermore, Defendant Day is not responsible for administering medication and rarely deals with inmates unless there is an issue. (*Id.* at ¶¶ 1, 7.) There is no genuine issue of material fact that Defendant Day took any retaliatory action against Plaintiff because of his mental health needs or free speech. Furthermore, it is undeniable that Defendant Day's act in transferring Plaintiff to a single cell advanced a legitimate correctional goal. There is limited space in prison and Defendant Day needed to conserve space within his Ad Seg unit. (*Id.* at ¶ 2.) Plaintiff refused to take a cellmate because he claims the potential cellmate did not have "like concerns." (Pl. Compl. at 8, ¶ 11, Doc. 1; Day Decl. ¶ 2.) Defendant Day explained to Plaintiff the need to conserve

space. (Day Decl. ¶ 2.) Plaintiff still refused a cellmate and Defendant Day, within his authority, transferred Plaintiff to a single cell so that the double cell would be usable for inmates who would cell with one another. (*Id.* at ¶¶ 2, 3.) The cell that Plaintiff was moved to was a single cell. (*Id.* at ¶ 3.) Inmates typically do not like the single cell because there is less shelving and the double cell has more space and items such as a table, lockers, and a seat. (*Id.* at ¶ 2.) Plaintiff was more concerned with property issues than his mental health issues, even when he talked to Defendant Cao. (Cao Decl. ¶ 4; Exhibit A to Cao Decl.) All of the evidence demonstrates that Plaintiff was more upset about not having his property and likely being moved to a smaller cell, and was not actually experiencing any real mental health needs when Defendant Day moved Plaintiff to a single cell. Therefore, Plaintiff has not established a genuine issue of material fact for trial as to his claim against Defendant Day for First Amendment retaliation.

### VIII. Conclusion

Plaintiff has "failed to point to 'specific facts' in the record that could 'lead a rational trier of fact to find' in his favor. *Matsushita*, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e))." *Beard*, 548 U.S. at 535. Accordingly, pursuant to Rule 56 of the Federal Rules of Civil Procedure, the Court HEREBY GRANTS Defendants' motion for summary judgment and ORDERS that this action be DISMISSED.

IT IS SO ORDERED.

Dated:   January 30, 2012

UNITED STATES MAGISTRATE JUDGE